TOLEDO BAR ASSOCIATION *v.* STAHLBUSH.

[Cite as *Toledo Bar Assn. v. Stahlbush*, 126 Ohio St.3d 366, 2010-Ohio-3823.]

*Attorneys at law — Misconduct — Two-year license suspension with one year stayed on conditions.*

(No. 2010-0032 — Submitted March 30, 2010 — Decided August 24, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-059.

_____

**Per Curiam**.

{¶ 1} Respondent, Kristin Ann Stahlbush of Toledo, Ohio, Attorney Registration No. 0064019, was admitted to the practice of law in Ohio in 1994. In August 2008, relator, Toledo Bar Association, filed a complaint charging her with violations of the Code of Professional Responsibility and the Ohio Rules of Professional Conduct for inflating the billable hours for work she performed as a court-appointed attorney in the juvenile- and general-division courts in Lucas County. Based upon findings that respondent committed multiple violations of the ethical standards incumbent upon Ohio lawyers, the board recommends that we suspend respondent's license to practice law in Ohio for two years, with one year stayed on conditions. For the reasons that follow, we accept the board's recommendation.

**Misconduct**

{¶ 2} Respondent, a solo practitioner in Toledo, Ohio, limited her practice primarily to court-appointed work in the juvenile and general divisions of the Lucas County Court of Common Pleas. In early 2007, court personnel discovered that respondent's billings in the juvenile court were very high and that she had billed the juvenile court for more than 24 hours per day on at least three

occasions, and more than 20 hours per day on five other occasions, in 2006. Further investigation revealed that on numerous additional occasions, respondent had billed the court for work in excess of 14 and up to 19 hours per day. When respondent failed to provide documentation to support the hours she had billed, the juvenile court's administrative judge referred the matter to relator. After conducting an investigation, relator filed a five-count complaint alleging that respondent's conduct violated DR 1-102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (prohibiting conduct prejudicial to the administration of justice), 1-102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), and 2-106(A) (prohibiting a lawyer from charging an excessive fee) and Prof.Cond.R. 8.1(b) (requiring a lawyer's cooperation with disciplinary authority).[1]

{¶ 3} On the third day of the hearing before a panel of the Board of Commissioners on Grievances and Discipline, the parties submitted stipulations that the respondent had billed the county for 3,451.4 hours for appointed-counsel services in 2006, that a portion of the time she billed was false and fraudulent, and that her conduct violated DR 1-102(A)(4), 1-102(A)(5), 1-102(A)(6), and 2-106(A). The panel accepted these stipulations and found that in addition to billing more than 24 hours in a day, respondent's submissions to the court also aver that she worked 14 to 24 hours on numerous occasions. In one 96-hour period, respondent billed 90.3 hours, and in a separate 144-hour period, she billed 139.5 hours. Additionally, the board found that respondent admitted that she had double-billed the general division of the court for work she performed in a capital case and that she had returned the unearned portion of those fees.

---

1. Relator charged respondent with misconduct pursuant to applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which superseded the Code of Professional Responsibility.

**{¶ 4}** Based upon the parties' stipulations and its own factual findings, the panel and board concluded, and we agree, that respondent's conduct violated DR 1-102(A)(4), 1-102(A)(5), 1-102(A)(6), and 2-106(A).

**{¶ 5}** The parties did not stipulate, and the panel and the board made no finding, regarding the allegation that respondent violated Prof.Cond.R. 8.1(b). However, in light of relator's apparent abandonment of the claim and respondent's eventual cooperation with the disciplinary process, we hereby dismiss Count Five of relator's complaint.

### Sanction

**{¶ 6}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 7}** The board found that three of the nine aggravating factors set forth in BCGD Proc.Reg. 10(B)(1) are present: a dishonest or selfish motive, a pattern of misconduct, and multiple offenses. BCGD Proc.Reg. 10(B)(1)(b), (c), and (d).

**{¶ 8}** In mitigation, the board found that respondent has no prior disciplinary record and that she is known by clients, peers, judges, and magistrates as a competent, hard-working attorney who represents her clients zealously. BCGD Proc.Reg. 10(B)(2)(a) and (e). The board also noted that respondent has made restitution to the general division of the common pleas court for the double-billing in one case, has agreed to forgo any claim for the $12,000 in attorney-fee applications that she submitted to the court in 2007, and has been

denied court appointments in the juvenile court, her primary source of income. See BCGD Proc.Reg. 10(B)(2)(f).

{¶ 9} Relator sought a one-year suspension of respondent's license to practice law, with six months stayed. Respondent, in contrast, argued for a two-year suspension, but urged that the entire suspension be stayed. After considering respondent's conduct, the aggravating and mitigating factors, and the sanctions imposed by this court in *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368; *Disciplinary Counsel v. Holland*, 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361; and *Disciplinary Counsel v. Rohrer*, 124 Ohio St.3d 65, 2009-Ohio-5930, 919 N.E.2d 180, the panel and board now recommend that we impose a two-year license suspension with one year stayed on the conditions that respondent submit to one year of monitored probation and commit no further ethical violations. Respondent objects to the recommended sanction, arguing that it is excessive in light of the facts and the case law cited by the board.

{¶ 10} In *Agopian*, the respondent had submitted fee requests for work performed in excess of 24 hours on three separate days. *Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 6. The record demonstrated that the respondent had performed all the work he claimed in each case but that he had failed to accurately record the dates he appeared in court or the specific number of hours he had spent on those cases. Id. Nonetheless, there was no evidence that respondent had attempted to collect fees for work he did not perform. Id. Rather, the evidence demonstrated that the respondent had " 'routinely perform[ed] services in an amount far in excess of the time for which he submit[ted] payment requests.' " Id., quoting the panel. Instead of " 'taking one hour * * * and turning it into three,' " it appeared that he " 'was taking three hours and turning it into one.' " (Ellipsis sic.) Id., quoting a panel member. Therefore, we concluded that a public reprimand was the appropriate sanction in that case. Id. at ¶ 15.

{¶ 11} Respondent equates her "sloppy record-keeping" to the billing errors committed by the respondent in *Agopian*. The evidence, however, demonstrates that not only did she fail to keep adequate records of the hours she worked on behalf of her clients, but she also submitted fee requests that deceptively inflated the hours she worked, and that in some instances, she merely guessed at the time she had spent on a case. Viewed in isolation, her fee requests did not appear unreasonable to the judges and officials charged with reviewing them, but viewed on a continuum, they were simply incredible.

{¶ 12} When confronted with the excessiveness of her fee requests, respondent initially maintained that she had worked every hour that she had billed. She eventually admitted that she could have made some mistakes in her billing, that she had failed to keep accurate time records, and that if her billing records were correct, she would have been working an average of almost ten hours a day, 365 days a year. Ultimately, she conceded that while she worked long hours, she did not maintain such a schedule.

{¶ 13} Additionally, respondent regularly submitted bills exceeding the fee caps for her juvenile cases. Moreover, the former administrative judge testified that in 2006, attorneys practicing in the court were aware that he was "quite liberal" with approving fee requests that exceeded those caps.

{¶ 14} As the board recognized, the facts of *Holland* are very similar to those in the case at bar. There, the respondent overcharged a juvenile court for services he provided as court-appointed counsel. *Holland*, 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361, at ¶ 7-8. Although he was acquitted of criminal charges arising from his conduct, we agreed with the board's determination that the respondent's practice of charging multiple clients for the same hours violated DR 1-102(A)(4). Id. at ¶ 19.

{¶ 15} In *Holland*, we observed, "Padding client bills with hours not worked is tantamount to misappropriation," and disbarment is the presumptive

sanction for misconduct involving misappropriation. *Holland*, 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361, ¶ 20, citing *Toledo Bar Assn. v. Batt* (1997), 78 Ohio St.3d 189, 677 N.E.2d 349, and *Dayton Bar Assn. v. Gerren*, 103 Ohio St.3d 21, 2004-Ohio-4110, 812 N.E.2d 1280, ¶ 14. We emphasized that "[b]y overcharging the juvenile court, respondent exploited an already overburdened system designed to aid the poorest members of our society and lessened public confidence in the legal profession and compromised its integrity." Id. at ¶ 22. Therefore, while recognizing the respondent's reputation and lack of a prior disciplinary record as mitigating factors, we concluded that his practice of certifying inflated fee requests that could not be explained by any conceivable mistake warranted a harsher sanction than the recommended one-year suspension with six months stayed. Id. at ¶ 23-25. Accordingly, we imposed a one-year suspension from the practice of law. Id. at ¶ 25.

{¶ 16} Respondent also objects to the board's reliance upon *Rohrer*, 124 Ohio St.3d 65, 2009-Ohio-5930, 919 N.E.2d 180, claiming that "the issues were completely different," because in *Rohrer*, the respondent deliberately violated a court order not to discuss a client's case with the media and then lied about doing so. See *Rohrer* at ¶ 20. In contrast, respondent contends that the board found that many of her problems were due to her "sloppy record-keeping" and, with one exception, were not intentional. Respondent steadfastly maintained that she had worked every hour she billed until relator confronted her with the fact that she would have had to have worked an average of almost ten hours per day, 365 days a year to have worked all of the hours she billed – testimony that was patently false in light of her admission that she did not maintain such a schedule. Despite respondent's arguments, poor record keeping alone cannot explain overbilling of such magnitude.

{¶ 17} Having reviewed the record, weighed the aggravating and mitigating factors, and considered the sanctions imposed for comparable conduct,

we reject respondent's objection and adopt the board's recommended sanction of a two-year license suspension with one year stayed. Accordingly, Kristin Ann Stahlbush is suspended from the practice of law in the state of Ohio for two years, with one year stayed on the conditions that she submit to one year of monitored probation and commit no further ethical violations. If respondent fails to meet these conditions, the stay of her suspension will be lifted, and respondent will serve the entire two-year suspension from the practice of law. Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, FARMER, and CUPP, JJ., concur.

BROWN, C.J., not participating.

SHEILA G. FARMER, J., of the Fifth Appellate District, sitting for LANZINGER, J.

_____

Jonathan B. Cherry, Bar Counsel, George E. Gerken, and Vincent S. Mezinko, for relator.

Lorin J. Zaner, for respondent.

_____