**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Rusu,* **Slip Opinion No. 2019-Ohio-1201.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-1201

DISCIPLINARY COUNSEL *v.* RUSU.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Rusu,* Slip Opinion No. 2019-Ohio-1201.]**

*Attorneys—Misconduct—Violations of the Code of Judicial Conduct and the Rules of Professional Conduct, including failing to recuse from cases in which judge's impartiality could reasonably be questioned—Significant mitigating factors—Public reprimand.*

(No. 2018-1436—Submitted January 9, 2019—Decided April 3, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-003.

_____

**Per Curiam.**

{¶ 1} Respondent, Judge Robert Nathaniel Rusu Jr., of Youngstown, Ohio, Attorney Registration No. 0062431, was admitted to the practice of law in Ohio in

1993. He was appointed to the Mahoning County Probate Court in July 2014 and elected to a full term on that court in November 2014.

{¶ 2} Relator, disciplinary counsel, filed a two-count amended complaint with the Board of Professional Conduct on May 16, 2018. That complaint alleged that among other things, Rusu engaged in professional misconduct by presiding over numerous cases in which he had previously served as attorney of record and failing to timely notify multiple clients that he was terminating his representation following his appointment to the bench. The parties entered into stipulations of fact, agreed that Rusu had committed two of the alleged rule violations, and agreed to dismiss a third. Relator presented evidence regarding two other alleged violations at a hearing before a panel of the board.

{¶ 3} The panel made findings of fact and agreed that Rusu's conduct violated several rules of the Code of Judicial Conduct that required him to disqualify himself in any proceeding in which his impartiality might reasonably be questioned, to avoid impropriety and the appearance of impropriety, and to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary. The panel also found that Rusu failed to take reasonable steps to protect his clients' interests after terminating his representation. The panel unanimously dismissed two remaining alleged violations. On those findings and in the presence of one aggravating factor and seven mitigating factors, the panel recommended that Rusu be publicly reprimanded for his misconduct.

{¶ 4} The board issued a report adopting the panel's findings and recommended sanction, and neither party has objected to that report. Based on our independent review of the record, we adopt the board's findings and publicly reprimand Rusu for his misconduct.

**Misconduct**

*Count One: Presiding over Cases in which Judge Rusu Previously Served as an Attorney of Record*

{¶ 5} Beginning in August 2012, Rusu represented Beth Ann Malone in her capacity as the executor of her aunt's probate estate. After the Mahoning County Probate Court approved the inventory and appraisal that Rusu had filed on Malone's behalf, Rusu assisted Malone in distributing the estate assets. As the remainder beneficiary, Malone's mother was to receive two timeshares and a cash distribution of $3,851.53. Malone's mother disclaimed the timeshares, and they passed to Malone. After handling the paperwork to accomplish those transfers, Rusu prepared the final fiduciary's account.

{¶ 6} In early January 2014, Malone signed the final accounting and paid Rusu's fees, but she informed Rusu's paralegal that she did not have enough checks to issue the final distribution to her mother. Malone stated that she would obtain additional checks and would return with a check for her mother. In late May 2014, Malone informed Rusu's paralegal that she had used the estate funds for her own benefit because she believed that her mother had disclaimed her entire interest in the estate. The paralegal informed Malone that her mother had disclaimed only her interest in the timeshares and that Malone would need to replace the money she had taken from the estate checking account. The following month, Rusu sent Malone a letter advising her to reimburse the estate funds immediately, but Malone did not do so.

{¶ 7} In July 2014, Rusu wrote a letter to Malone informing her that he would no longer act as her counsel due to his appointment to the bench but that the other attorneys at his former firm would continue to represent her. He successfully moved the court to permit the substitution of his former associate, Charlene Burke, as Malone's counsel. But Rusu did not report Malone's misuse of funds to the court

even though the estate was insolvent and the fiduciary's account was delinquent before he took the bench.

**{¶ 8}** In February 2016, a deputy clerk issued citations to Malone and Burke ordering them to appear and show cause why they had failed to timely file a status report regarding the estate. After a hearing, a magistrate issued a decision finding that no fiduciary's account had been filed and that Malone did not have the funds to make the final distribution to her mother. The magistrate recommended that the court order Burke to file an application for delayed distribution on behalf of Malone with a proposed promissory note and mortgage on Malone's property. On April 5, 2016, Judge Rusu adopted the magistrate's decision in its entirety. In addition, Rusu later (1) adopted a magistrate's decision finding that Malone had reached a settlement agreement to compensate her mother, (2) issued orders withdrawing the citations for Malone and Burke to appear and show cause, and (3) issued an order rejecting the fiduciary's final account because no application for attorney fees had been filed with the court. A visiting judge presided over the remaining proceedings in the case.

**{¶ 9}** At his disciplinary hearing, Rusu admitted that when the case came before him as a probate judge, he was aware that he had previously represented Malone as executor of the estate. He explained that he did not initially believe that his conduct would create an appearance of impropriety, however, because all the parties were represented by counsel, had agreed to the resolution of the case, and had never formally appeared before him.

**{¶ 10}** Relator and Rusu have identified approximately 170 additional cases in which Rusu served as counsel of record and then took some action after becoming a judge. More than 120 of those actions involved nothing more than a deputy clerk issuing form letters and notices bearing Rusu's signature or stamping Rusu's signature to accountings after the deputy clerk had reviewed them and had confirmed that they were complete and correct. In other cases, Rusu waived certain

annual reporting requirements when conditions were not subject to change over time, approved settlement distributions that were agreed upon or that were consistent with previous distributions in the same case, appointed fiduciaries pursuant to a decedent's will or the agreement of all interested parties, and approved guardian or attorney fees (including attorney fees for his former firm) in accordance with an established fee schedule.

{¶ 11} Three of the identified cases involved Judge Rusu's approval of a magistrate's decision. In two of those cases, he approved a magistrate's decision to withdraw a citation that had been issued to a guardian or fiduciary after the problem that had caused the citation to be issued was cured. In the third, he approved a magistrate's decision to terminate a guardianship at the request of all involved parties, including the ward's treating physician.

{¶ 12} The parties stipulated and the panel and board found that Rusu's conduct violated Jud.Cond.R. 1.2 (requiring a judge to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and to avoid impropriety or the appearance of impropriety) and 2.11(A) (requiring a judge to disqualify himself in any proceeding in which the judge's impartiality might reasonably be questioned). Based on the parties' stipulations and the evidence presented at the hearing, the panel unanimously dismissed an additional allegation with respect to this count. *See* Gov.Bar R. V(12)(G). We adopt these findings of fact and misconduct.

*Count Two: The Sale of Rusu's Law Practice and the Termination of His Client Representations*

{¶ 13} When Rusu was initially appointed and later elected to a full term on the Mahoning County Probate Court, he owned 49 percent of the outstanding stock in Lane & Rusu Co., L.P.A. After taking the bench, Rusu notified a number of his clients with active matters that he was terminating his representation due to his judicial appointment and offered them the services of other attorneys at his former

5

law firm. However, he remained the attorney of record in a large number of open—but largely dormant—estates and guardianships. He did not timely notify those clients of the termination of his representation or give those clients the opportunity to employ other counsel or request the return of their files. And although firm associate Charlene Burke purchased Rusu's 49 percent interest in the firm in April 2015, neither Rusu nor Burke provided written notice of the sale to the firm's clients.

{¶ 14} The panel and board found that this conduct violated Prof.Cond.R. 1.16(d) (requiring a lawyer withdrawing from representation to take steps reasonably practicable to protect a client's interest). The panel unanimously dismissed another alleged violation that purportedly arose from the sale of Rusu's ownership interest in his former firm. We adopt the board's findings with respect to this count.

### Sanction

{¶ 15} When imposing sanctions for judicial misconduct, we consider all relevant factors, including the ethical duties that the judge violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases. *See Disciplinary Counsel v. Elum*, 148 Ohio St.3d 606, 2016-Ohio-8256, 71 N.E.3d 1085, ¶ 9. "The primary purpose of judicial discipline is to protect the public, guarantee the evenhanded administration of justice, and maintain and enhance public confidence in the integrity of this institution." *Disciplinary Counsel v. Russo*, 124 Ohio St.3d 437, 2010-Ohio-605, 923 N.E.2d 144, ¶ 14.

{¶ 16} The sole aggravating factor present in this case is Rusu's commission of multiple offenses. *See* Gov.Bar R. V(13)(B)(4). The parties have stipulated that four mitigating factors are present—that Rusu has no prior disciplinary record, did not act with a dishonest or selfish motive, made full and free disclosure of his actions and demonstrated a cooperative attitude toward the disciplinary proceedings, and demonstrated his character and reputation for

significant community involvement as well as his commitment to the judicial system and the citizens he serves. *See* Gov.Bar R. V(13)(C)(1), (2), (4), and (5). The board agreed that these factors are present and also found that Rusu was frank and open during his testimony before the panel, took responsibility for his actions, did not actually harm his clients, and has implemented measures to prevent him from inadvertently presiding over any matter in which he participated in his private practice.

{¶ 17} On these facts, the board recommends that we publicly reprimand Rusu for his misconduct. In support of that recommendation, the board notes that we have previously publicly reprimanded two judges who presided over cases in which their impartiality could reasonably be questioned. In *Disciplinary Counsel v. Oldfield*, 140 Ohio St.3d 123, 2014-Ohio-2963, 16 N.E.3d 581, we publicly reprimanded a judge who presided over 53 cases in which a public defender appeared as counsel both during and immediately after a three-day period when the public defender was living in the judge's home and riding to and from the courthouse with the judge. In *Disciplinary Counsel v. Medley*, 93 Ohio St.3d 474, 756 N.E.2d 104 (2001), we publicly reprimanded a judge who failed to recuse himself from a case after he had spoken with the defendant by telephone following her arrest on a charge of driving under the influence, picked her up at the police station, and drove her home. We have also publicly reprimanded an attorney who withdrew from representing a client without taking reasonably practicable steps to protect the client's interest. *See Trumbull Cty. Bar Assn. v. Masek*, 150 Ohio St.3d 9, 2016-Ohio-3350, 78 N.E.3d 817.

{¶ 18} Nothing in the record indicates that Rusu's misconduct that is at issue in this case caused measurable harm to any litigants or resulted in anything less than the evenhanded administration of justice. By performing judicial functions in the same cases in which he had previously represented clients, however, Rusu created an appearance of impropriety that adversely reflected on the

independence, integrity, and impartiality of the judiciary—even though many of his actions were ministerial in nature. And by failing to notify a substantial number of clients with dormant cases that he was leaving his firm to become a judge, he deprived those clients of the opportunity to select new counsel of their own choosing before their cases resumed.

{¶ 19} Having considered that misconduct, the significant mitigating factors present in this case, and the sanctions we have imposed for comparable misconduct, we agree that a public reprimand is the appropriate sanction.

{¶ 20} Accordingly, Robert Nathaniel Rusu Jr. is publicly reprimanded for violating Jud.Cond.R. 1.2 and 2.11(A) and Prof.Cond.R. 1.16(d). Costs are taxed to Rusu.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

DEWINE, J., not participating.

_____

Scott J. Drexel, Disciplinary Counsel, and Jennifer A. Bondurant, Assistant Disciplinary Counsel, for relator.

Montgomery, Rennie & Jonson, L.P.A., George D. Jonson, and Lisa M. Zaring, for respondent.

_____